**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Edwin W.,
**Petitioner Below, Petitioner**

**vs.)  No. 21-0419** (Marion County No. 17-C-179)

R.S. Mutter, Superintendent,
**McDowell County Corrections,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**


Petitioner Edwin W.[1] appeals the April 22, 2021, order of the Circuit Court of Marion County denying his second petition for post-conviction habeas corpus relief on the basis of ineffective assistance by habeas counsel in his first habeas proceeding. Superintendent R.S. Mutter responds in support of the circuit court's order.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

Petitioner was convicted of multiple counts of first-degree sexual assault; sexual abuse by a parent, guardian or custodian; and use of obscene matter to seduce a minor.[3] Specific to the issue presented in this appeal, evidence was presented at petitioner's trial that petitioner's victim underwent two pelvic examinations. The physician who supervised the first pelvic examination, Dr. Martin Weisse, testified at trial, but the doctor who performed the second did not. Without objection, Dr. Weisse testified to the findings from the first examination that he supervised but did not perform. He also testified, again without objection, regarding the report of the second

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. Proc. 40(e).

[2] Petitioner appears by Sara B. Hall; respondent appears by Patrick Morrisey and Andrea Nease Proper. At the time of the filing of petitioner's appeal, he was housed at Mt. Olive Correctional Complex, and Donnie Ames was listed as the respondent. Since the filing of his appeal, however, petitioner has been moved to McDowell County Corrections. The appropriate party has been substituted under Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[3] For a full recitation of the facts, see *Edwin W. II v. Ballard*, No. 15-1063, 2016 WL 6835734 (W. Va. Nov. 21, 2016)(Memorandum Decision).

examination which was performed in California by another physician. The medical report from the second examination was admitted into evidence at trial, also without objection.

After this Court refused petitioner's direct appeal, he filed his first petition for a writ of habeas corpus alleging ineffective assistance of trial counsel based on the failure to object to the admission of a report and testimonial statements by a witness who did not appear at trial and who petitioner did not have the opportunity to cross-examine. The circuit court found there was sufficient evidence to reasonably conclude that trial counsel chose not to object to this evidence due to discussions with petitioner as part of a strategic plan, and it denied the petition.

Petitioner appealed the denial of his first habeas action, arguing that the circuit court erred by failing to find that the Confrontation Clause had been violated and by failing to perform a harmless error analysis regarding that issue. The appeal was denied. Relevant to the issues raised in this appeal, in denying petitioner's first habeas action appeal this Court noted that petitioner did not raise a stand-alone Confrontation Clause claim or the related harmless-error analysis. Instead, he argued that the failure to object to the evidence at issue during trial constituted ineffective assistance of counsel and we found that "the circuit court correctly limited its review . . . to . . . petitioner's] stated ground . . . ." *Edwin W. II*, 2016 WL 6835734, at *3. Accordingly, we found that the first two assignments of error had no merit. *Id*. We also found no error in the circuit court's conclusions that the decision not to object to the evidence at issue was strategic and not ineffective assistance of counsel. *Id.* at *4. We further stated that, based on the totality of the evidence against petitioner at trial and excluding the evidence being challenged, petitioner did not demonstrate that, but for the deficiencies of counsel, the results of the trial would have been different. *Id*.

Petitioner then initiated this second habeas proceeding on the sole ground of ineffective assistance of his first habeas counsel related to the failure to raise a stand-alone Confrontation Clause claim in the first habeas action.[4] After an omnibus hearing, the circuit court entered an order concluding that the representation of the first habeas counsel was deficient because she knew, or should have known, that raising a stand-alone Confrontation Clause violation claim in the first habeas proceeding was vital to the review of petitioner's case and the failure to do so stripped him of a basis to collaterally attack his conviction. It then performed a harmless error analysis and found that the violation of the Confrontation Clause was harmless. Accordingly, the circuit court found that the petitioner did not establish that there was a reasonable probability that, but for the deficient performance of the original habeas counsel, the result of the first habeas proceeding would have been different and denied the petition with prejudice. Petitioner appeals that ruling.

---

[4] In Syllabus Point 4, in part, of *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981) we held:

> A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing . . . .

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Hayes*, 219 W. Va. 417, 633 S.E.2d 771 (2006). In reviewing ineffective assistance of counsel claims, West Virginia courts consider whether counsel's performance was deficient under an objective standard of reasonableness; and whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See* Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). Counsel's performance is reviewed by an objective standard to determine whether the acts or omissions identified were "outside the broad range of professionally competent assistance," considering all of the circumstances and "refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions…." *Miller* at 6, 459 S.E.2d at 117, Syl. Pt. 6, in part.

It is well-settled law that an objection must be raised below to preserve an error or that error is waived. *See* Syl. Pt. 10, *State v. Bragg,* 140 W. Va. 585, 87 S.E.2d 689 (1955) (holding that "[a]n error in the admission of evidence not objected to by the defendant is deemed waived by him"); *State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996) (quoting *Meadows v. Holland*, 831 F.2d 493, 498 (4th Cir. 1987) ("West Virginia has always treated a failure to object to trial errors as a default of any right to assert these errors on direct appeal or in habeas review."); *State v. LaRock*, 196 W. Va. 294, 315-17, 470 S.E.2d 613, 634-36 (1996) (discussing the "raise or waive" rule and the discretionary and limited application of the plain error doctrine); *State v. Lively*, 226 W. Va. 81, 92-93, 697 S.E.2d 117, 128-29 (2010) (applying the raise or waive rule to the claim of a Confrontation Clause violation). In this case it is undisputed that petitioner's trial counsel did not object, on any basis, to the admission of the California medical report or Dr. Weisse's testimony. Petitioner's first habeas counsel identified this issue as the reason she did not assert a stand-alone Confrontation Clause claim in the first habeas petition. Under these circumstances, it was objectively reasonable for petitioner's first habeas counsel to raise the Confrontation Clause violation, if any, through an ineffective assistance of trial counsel claim based on the failure to object during trial only and to not raise a stand-alone Confrontation Clause violation claim. As such, she was not deficient in her performance and petitioner's claim fails. *See* Syl. Pt. 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995) ("In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive standard [set forth above], but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.").

Nevertheless, we find that even if the performance of petitioner's first habeas counsel was deficient, as found by the circuit court, petitioner still has not established that there was a reasonable probability that, but for counsel's failure to raise a stand-alone Confrontation Clause violation in the first habeas petition, the result of the first habeas proceeding would have been different. As discussed above, no objection was made at trial to the evidence. Further, we agree with the circuit court below that any violation of the Confrontation Clause in this case resulted in

3

only harmless error based, inter alia, on the testimony of the victim.[5] There was no error or abuse of discretion in the circuit court's finding that the evidence presented by the State was sufficient to support a finding that petitioner was guilty beyond a reasonable doubt, even without the evidence challenged after trial as violating the Confrontation Clause.

For the foregoing reasons, we affirm the circuit court's April 22, 2021, order denying petitioner's second habeas corpus petition.

Affirmed.

**ISSUED:** January 23, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

Wooton, Justice, dissenting:

I respectfully dissent from the Court's opinion, which for the second time in this case dances around a clear-cut violation of the Confrontation Clause by finding that petitioner's first habeas counsel was not ineffective in failing to raise constitutional error as a "stand-alone issue" on appeal,[6] and then waves the magic wand that seemingly makes all constitutional violations disappear: harmless error.

### The Confrontation Clause Issue

The confrontation issue in this case is so clear that no reasonable argument to the contrary

---

[5] As discussed in *Edwin II*, the credible testimony of the victim, even if uncorroborated, is sufficient to obtain a conviction in this case and credibility is determined by the jury. *See Edwin W. II v. Ballard*, No. 15-1063, 2016 WL 6835734, at *4 (W. Va. Nov. 21, 2016)(Memorandum Decision) (citing and applying Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)).

[6] The petitioner's direct appeal from his conviction was denied on January 20, 2010. Because it is well established that "[t]his Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein," Syllabus, in part, *Smith v. Hedrick*, 181 W. Va. 394, 382 S.E.2d 588 (1989), the petitioner's first habeas proceeding was his initial forum for resolution of the confrontation clause issue.

can be made. The petitioner's constitutional rights were violated when the trial court admitted the medical report of one physician, "the California doctor" – nowhere in the record of this case is this physician ever named – through the testimony of another, Dr. Martin Weisse. Dr. Weisse had in no way relied on, or even been aware of, the California doctor's examination findings at the time he examined the victim, and therefore the report was not admissible pursuant to Rule 703 of the West Virginia Rules of Evidence. Further, there is nothing in the record to support a finding that the California doctor was unavailable within the meaning of Rule 804(a), or that admission of his report fell within the exceptions enumerated in subsection (b) of that rule. In short, admission of the report could not be sustained under any well-recognized and longstanding exception to the hearsay rules. *See* text *infra*. Additionally, the petitioner's counsel never had an opportunity to cross examine the California doctor, despite the fact the California doctor's report was critical to the State's case.

First, with regard to that criticality, although on his examination of the victim Dr. Weisse found no evidence of penetration, the California doctor on his examination found notching or scar tissue on the victim's hymen. Inasmuch as the victim had not alleged penetration in her earlier statements to medical personnel and law enforcement officers, the California doctor's report was the *only* corroboration of the victim's testimony at trial that penetration occurred. Further, the California doctor's report contained a highly prejudicial detail that, again, the victim had never before mentioned: that the petitioner had brought a gun into the victim's room and laid it on the nightstand prior to raping her. The implied threat of that gun would be impossible for any juror to miss. Indeed, it is fair to characterize it as the proverbial clanging bell that cannot be un-rung.

On appeal from the denial of his first petition for writ of habeas corpus,[7] the petitioner's counsel did not raise the confrontation issue as what this Court termed a "stand-alone issue," but rather as an evidentiary issue: whether his trial counsel was ineffective in failing to object when the California doctor's report was introduced through the testimony of Dr. Weisse. For this reason, the Court declined to address the constitutional issue on the merits, finding that

> [w]hile petitioner's first two assignments of error rely on his assertion that a confrontation clause violation occurred, it is clear from the record on appeal that petitioner did not raise a stand-alone confrontation clause claim in his underlying habeas petition. Instead, in his habeas petition, petitioner argued solely that his trial counsel was constitutionally ineffective for failing to object to the medical evidence that he claims was admitted in violation of the confrontation clause. As such, the circuit court correctly limited its review of petitioner's habeas petition to his stated ground: whether his trial counsel was constitutionally ineffective. For that reason, we find no merit to petitioner's first two assignments of error because he failed to satisfy his burden to allege and establish those grounds in this habeas proceeding.

---

[7] *See Edwin W. II v. Ballard*, No. 15-1063, 2016 WL 6835734 (W. Va. Nov. 21, 2016) (memorandum decision).

*Edwin W. II*, 2016 WL 6835734 at *3. One Justice concurred in the result but made clear that his concurrence was based solely on counsel's procedural waiver, noting that "[t]he defendant had the *absolute right* to confront the doctors from California." *Id*. at *5 (Ketchum, J., concurring) (emphasis added).

In the instant case, an appeal from the circuit court's denial of the petitioner's second petition for writ of habeas corpus, history repeats itself. Although the circuit court found that the initial habeas counsel's failure to raise a stand-alone confrontation issue on appeal met the first prong of the *Strickland*[8] test, the majority disagrees, concluding – in the absence of any legal or factual support – that because counsel believed the failure to object at trial to the admission of the California doctor's report precluded her from raising a stand-alone issue on appeal, "it was objectively reasonable for petitioner's first habeas counsel to raise that Confrontation Clause violation, if any . . . based on failure to object during trial only[.]" I find this statement unfathomable. First year law students are familiar with the concept of plain error review, and a criminal defense attorney's failure to seek plain error review of a clear-cut constitutional violation should be deemed ineffective assistance as a matter of law. In this regard, although the majority takes pains to reference a single precedent for the proposition that plain error review has "discretionary and limited application[,]" *State v. Lively*, 226 W. Va. 81, 92-93, 697 S.E.2d 117, 128-29 (2010), it is well established in our law that "we may, *sua sponte, in the interest of justice*, notice plain error[.]" *State v. Hutchinson,* 176 W.Va. 172, 177, 342 S.E.2d 138, 142 (1986) (some emphasis added). *See also State v. Deel*, 237 W. Va. 600, 608, 788 S.E.2d 741, 749 (2016) ("Initially, we note that the Petitioner failed to object before the circuit court to any error concerning his constitutional rights under the ex post facto clause and failed to argue the issue on appeal. These failures, however, do not mean that the Petitioner waived his constitutional rights afforded to him by the ex post facto clause nor does it preclude us from examining an issue under a plain error analysis."); *Cartwright v. McComas,* 223 W.Va. 161, 164, 672 S.E.2d 297, 300 (2008) (quoting Syl. Pt. 1, in part, *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998)) ("[I]t is within the authority of this Court to 'sua sponte, in the interest of justice, notice plain error.'").

I challenge anyone to put forward a reason for counsel not to even *attempt* to have a winning constitutional issue reviewed on appeal. What is there to lose? What could possibly be counsel's strategy here?[9] The majority offers no answers to these questions.

---

[8] *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984), requires a reviewing court to determine whether counsel's performance was deficient under an objective standard of reasonableness, and if so, whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

[9] One can only suppose that habeas counsel's "strategy" was the same as that of trial counsel in not objecting to the evidence in the first place:

> There was some reason why—there was some value to that [evidence of the second examination performed in California] coming in. I can't remember what it is, too. So I was in the—I can't remember exactly why. I remember having discussions with

It is telling that in its truncated discussion of the confrontation clause issue, the majority omits any mention of the United States Supreme Court's recent decision in *Hemphill v. New York*, 142 S. Ct. 681 (2022), wherein the Court reiterated that

> "[i]n charting a different path, the *Crawford [v. Washington, 541 U.S. 36 (2004)]* Court examined the history of the confrontation right at common law and concluded that 'the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.' *Id.,* at 50, 124 S. Ct. 1354. The Court continued, 'the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' *Id.,* at 53–54, 124 S.Ct. 1354.[4] Because '[t]he text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts,' the requirement was 'most naturally read' to admit 'only those exceptions established at the time of the founding.' *Id.,* at 54, 124 S. Ct. 1354; see also *Giles v. California*, 554 U.S. 353, 377, 128 S. Ct. 2678, 171 L.Ed.2d 488 (2008) ('declin[ing] to approve an exception to the Confrontation Clause unheard of at the time of the founding or for 200 years thereafter')."

*Hemphill,* 142 S. Ct. at 690–91. In the instant case, admission of the California doctor's report through the testimony of Dr. Weisse was a clear violation of the Confrontation Clause pursuant to the instruction in *Crawford* and *Hemphill*, and I strongly object to the majority's refusal to fully and fairly engage that issue.

**Harmless Error**

Perhaps recognizing that its discussion of the confrontation issue is wholly unconvincing, the majority steers quickly into the judicial safe harbor of harmless error. In this regard, the entirety of the majority's analysis consists of a citation to its equally cursory analysis in *Edward W. II*: that "the testimony of the victim, even if uncorroborated, is sufficient to obtain a conviction . . . and credibility is determined by the jury." 2016 WL 6835734 at *4 (citation omitted).

---

> [petitioner] about that California stuff, too. I think he wanted me to do one thing[,] and I was thinking maybe to do the opposite would be better, but I can't remember what it is, what we were talking about, but we were having discussions about it.

*Edwin W. II*, 2016 WL 6835734 at *2. Pursuant to the majority's analysis, 'I'm sure I had a reason but I don't know what it might have been' is now a sufficient statement of counsel's trial or appellate strategy.

It is readily apparent that under this logic – a logic entirely divorced from the realities of criminal trial practice – *any* error in the admission or exclusion of evidence, constitutional or otherwise, would be harmless in a case involving sexual assault or abuse so long as the victim testifies to the elements of the crime. But let us look at what happened in this case, where the victim's earlier disclosures specifically disclaimed penetration, her initial physician's examination showed no evidence of penetration, and no gun was ever mentioned. These significant omissions provided opportunities for impeachment when the petitioner testified at trial that there *was* penetration and that the petitioner brought a gun to her room and put it on the nightstand (with all that this action implies). Such impeachment lost any force, however, when the State, without objection, introduced the medical report of a non-testifying physician which neatly filled in the holes in the victim's earlier story. Can it reasonably be contended that the evidence – clearly unconstitutional evidence – didn't affect the jury's decision in any way? I think not.

In summary, the ugly facts of a case, which can present the temptation for an appellate court to quickly affirm and move on, do not give us leeway here to skirt the fact that admission of the California doctor's medical report was a clear violation of the petitioner's rights under the Confrontation Clause. At the very least, I would put this case on the Court's Rule 19 docket to fully and fairly evaluate the harmless error issue in light of the entirety of the evidence. The majority's cursory analysis deprives the petitioner of his right to a full and fair review of his claims.

For the foregoing reasons, I respectfully dissent.